IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>SANG THANH HUYNH,<br><br>    Defendant. | No. 1:19-cr-57 (LO) |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT'S MOTION TO SUPPRESS**

The defendant, Sang Thanh Huynh, has moved to suppress the results of a search of his cell phone, which was seized as evidence by the Washington, D.C. Metropolitan Police Department shortly after the defendant was shot and wounded by an unknown assailant on August 14, 2018. There is no basis for suppression. The MPD had probable cause to believe the defendant's phone contained information relevant to its investigation of that shooting, and the warrantless seizure of the defendant's cell phone was to preserve that evidence while it conducted its investigation. The MPD subsequently obtained a sufficiently particularized warrant supported by probable cause authorizing the search of his phone.

**I.     FACTS**

On August 14, 2018, at approximately 8:45 p.m., Sang Huynh and an acquaintance, S.M., were standing in front of a carryout restaurant in the 3200 block of Mount Pleasant Avenue, NW, Washington, D.C. According to S.M., an unknown man approached the carryout restaurant on foot. S.M. thought the man was about to enter the restaurant. As S.M. and Sang Huynh were talking, S.M. heard a gunshot. When S.M. turned around, he saw the man shooting at them from

the doorway of the carryout, a distance of about 10-15 feet. After firing several shots, the man fled.

Several MPD officers were in the vicinity, heard three gunshots, and responded immediately. Sang Huynh ran toward the officers, yelling that he had been shot in front of the carryout restaurant. S.M. followed behind Sang Huynh and also said he (S.M.) had been shot. The officers observed that Sang Huynh had been shot twice. Sang Huynh was taken to Medstar Washington Hospital Center, where he underwent surgery for gunshot wounds to his groin and chest. S.M. was struck by a bullet in his left leg. He was taken to Howard University Hospital, where he was treated and released.

MPD Detective Gonzales went to Medstar hospital to interview Sang Huynh. He was being taken into surgery when she arrived. Sang Huynh was conscious, and Detective Gonzales asked him whether he knew who had shot him. Sang Huynh shook his head no. At the hospital, a crime scene technician recovered Sang Huynh's bloody clothing (sweatshirt, pants, underwear, and shirt) and cell phone and logged those items into evidence.

That evening, MPD officers recovered three 9 mm shell casings and a bullet fragment near the doorway of the carryout restaurant. They interviewed a few individuals who had heard the gunshots, but no one was able to provide a detailed description of the shooter. A neighborhood canvass failed to provide any additional evidence, and MPD was not able to locate any useful surveillance video of the shooting from businesses or residences in the area. MPD also ran criminal history checks on S.M. and Sang Huynh. S.M. had no criminal history. MPD learned that Sang Huynh had been arrested in Washington, D.C. in 2016 for felony assault and that he also had multiple arrests in Virginia.

The police interviewed S.M. after he was released from the hospital. He told the police that he did not recognize the shooter, and he could only provide a vague description of him – a black male in is twenties wearing a black hoody with a bandana around his forehead.

On August 15, 2018, at about 7:00 a.m., MPD Detectives Claxton and Lake attempted to interview Sang Huynh at the hospital following his surgery. Sang Huynh told the detectives that he was in pain and was unable to speak to them at that time. The detectives spoke briefly to Sang Huynh's family members who were at the hospital. The detectives noted that, despite Sang Huynh's statement that he was unable to speak to them, Sang Huynh was able to have a conversation with his family members. As a precaution, MPD notified hospital security to restrict access to Sang Huynh's room to certain family members, and Sang Huynh was identified in the hospital's records under a code.

On August 15, 2015, at 2:33 p.m., MPD received an anonymous tip by email indicating that an individual (identified here as Suspect) was engaged in a social media exchange with the victim of the shooting. The tip identified the social media usernames/accounts for the Suspect and victim. The victim's account was identified as concretejungle.dc, which is a Instagram account for Sang Huynh. According to the tipster, the Suspect was threatening Sang Huynh on social media and then bragging about hurting him.

At about 7:55 p.m. that same day, MPD Detectives Geiger and Nepomnashi interviewed Sang Huynh at the hospital. Sang Huynh said that he had been eating at the carryout restaurant and was then shot by a person whom he did not know and could not identify. Sang Huynh said that the shooter had his face fully covered with a black t-shirt. Sang Huynh also said that he did not need the detectives' help and was not going to waste his breath talking to the police.

Detective Geiger noted in his report of the interview that he did not believe that Sang Huynh was being truthful about the extent of his knowledge of the incident.

Based on the anonymous tip, MPD detectives viewed publicly available Instagram stories for the Instagram account concretejungle.dc. They observed videos posted to that account of Sang Huynh and S.M. along Mt. Pleasant Avenue just prior to the shooting. They also viewed other videos in which it appears that Sang Huynh is challenging another person to a fight. The detectives also identified the other social media account discussed in the anonymous tip as belonging to Suspect.

MPD Detective Geiger then sought search warrants for the Instagram accounts discussed above for Sang Huynh and Suspect. The warrants were authorized on August 22, 2018, by the Honorable Robert S. Tignor, Senior Judge, District of Columbia Superior Court. On that date, Detective Geiger also obtained a search warrant from Judge Tignor for cell site data for Suspect's cell phone. Detective Geiger received the requested electronic data from Instagram/Facebook for the two Instagram accounts identified in the search warrants on September 11, 2018. On September 8, 2018, Detective Geiger forwarded a search warrant application to the District of Columbia U.S. Attorney's Office for Sang Huynh's cell phone, and the warrant was authorized by the Honorable Geoffrey Alprin, Senior Judge, District of Columbia Superior Court, on September 20, 2018.

Detective Geiger reviewed the search warrant data for the four warrants discussed above, but he was not able to gather any additional evidence to identify the person who had shot Sang Huynh. His review of the Instagram accounts confirmed that Sang Huynh intended to fight "infiedldc710" on August 14, 2021, near the location of the shooting, and a review of text messages, videos, and photos from Sang Huynh's phone revealed that he was dealing marijuana.

4

But, there was no evidence (*e.g.*, messages, videos, or photos) from his phone identifying the shooter. The cell site information for Suspect's phone, however, indicated that Suspect was in Virginia at the time of the shooting, even though Suspect was identified as the Instagram user "infideldc710." As a result, without any additional evidence to identify the shooter, Detective Geiger recommended suspension of the investigation. On October 1, 2018, MPD placed the case in inactive status until additional evidence is obtained.

## II.   ARGUMENT

### A.   The warrantless seizure of the cell phone was reasonable.

The defendant contends that the warrantless seizure of the cell phone violated the Fourth Amendment, as he was a not involved in any illegal activity. The cell phone was seized because there was probable cause to believe that it contained evidence of a crime, *i.e.*, the shooting on August 14, 2018, not necessarily of a crime committed by the defendant.

The Fourth Amendment prohibits police from conducting "unreasonable searches and seizures," and requires that all warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010).

There are several exceptions to the Fourth Amendment's requirement that police obtain a warrant before seizing property. One of these, exigent circumstances, allows police to bypass a warrant "[w]hen the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search or seizure is objectively reasonable under the Fourth Amendment." *United States v. Brown*, 701 F.3d 120, 126 (4th Cir. 2012) (quoting *Kentucky v.*

*King*, 563 U.S. 452, 460 (2011) (internal quotations omitted)). "The types of exigent circumstances that may justify a warrantless seizure include, inter alia, the imminent destruction of evidence." *Id*.

"The Supreme Court has made clear that officers may seize and secure 'cell phones to prevent destruction of evidence while seeking a warrant.'" *United States v. Hewlett*, 471 F. Supp. 3d 724, 743 (E.D. Va. 2020) (quoting *Riley v. California*, 573 U.S. 373, 388 (2014)). "In such circumstances, a 'temporary warrantless seizure will be upheld if it was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time.'" *Id*. (quoting *United States v. Grinder*, 808 Fed. App'x. 145, 147 (4th Cir. 2020); *see also United States v. Martin*, 180 F. Supp. 3d 373, 379 (E.D.N.C. 2016) (finding that exigent circumstances justified the warrantless seizure of electronics, including a cell phone, because "[i]f [police] had been required to obtain a warrant without first seizing those items, defendant would have had the opportunity to destroy valuable evidence.").

Here, the warrantless seizure of the defendant's cell phone was supported by probable cause. The defendant was shot. The shooting did not appear to be random. The assailant appeared to be targeting the defendant and his friend specifically. Experienced detectives know that cell phones contain a wealth of evidentiary data, and it was reasonable of MPD to conclude that the defendant's cell phone might reveal – through messages, photos, videos, social media postings, contact information, or chats – evidence as to why, for example, the defendant had been shot, who had shot him, where exactly the shooting had taken place, or whether the defendant or the shooter had been acting in self-defense. Indeed, "several courts have found that probable cause existed to justify the issuance of a search warrant based solely on law

enforcement experience that cell phones found near illegal activity are highly likely to contain incriminating evidence. *United States v. Harris*, 2016 WL 1441382 at *11 (E.D. Va. 2016), quoting *United States v. Fisher*, 2015 WL 1862329 (D. Md. 2015), and summarizing cases, aff'd, 688 F. App'x 223 (4th Cir. 2017).

The seizure of the defendant's cell phone was also necessary to prevent the destruction of evidence. It was reasonable of MPD to assume that, if they did not seize the cell phone at the hospital, the defendant (or someone at his direction) would have deleted any relevant communications, photos, videos, photos, or videos that would have provided evidence or leads involving the identity of the person who shot him.

In some cases, courts have upheld the seizure of electronic devices, including cell phones, under the plain view exception to the Fourth Amendment's warrant requirement. "The plain view doctrine applies to objects which are not in and of themselves contraband, so long as the incriminating nature of the object is readily apparent or the object is or contains evidence of a crime." *United States v. Delva*, 13 F. Supp. 3d 269, 276 (S.D.N.Y. 2014), aff'd 858 F.3d 135 (2d Cir. 2017) (citing *Arizona v. Hicks*, 480 U.S. 321, 327–28 (1987)). "It is not necessary that an officer know with certainty that an object seized is or contains evidence of a crime at the moment of seizure; it is enough that there be probable cause to associate the object with criminal activity." *Id*. (citing *Texas v. Brown*, 460 U.S. 730, 741–42 (1983)). "Whether an object is perceived as evidence or containing evidence of a crime depends on the assessment of the law enforcement officer at the scene. Ordinary, everyday objects such as cell phones, laptops, and cameras may take on a different character depending on the context in which they are found." *Id*. (internal citation omitted).

7

The collection of evidence from potential victims and potential perpetrators of a crime is permissible under the "plain view" exception to the warrant requirement. *See United States v. Davis*, 690 F.3d 226 (4th Cir. 2012). In *United States v. Davis*, police responded to a hospital's call reporting a patient, Davis, suffering from a gunshot wound and claiming to be a robbery victim. *Id*. at 230. Police collected Davis's property without his permission and without a warrant, believing that it could provide "evidence in the prosecution of Davis' assailant." *Id*. Police's subsequent search of Davis's property produced evidence that incriminated him in a different crime, and the trial court denied Davis's motion to suppress the evidence. *Id*. at 231–32.

The Fourth Circuit held that the seizure of Davis's property from the hospital was permissible under the "plain view" exception. *Id*. at 233–37 (holding that the officer (1) was lawfully present in the hospital room where he could see the property, (2) had lawful access to the property, and (3) could readily identify the property to be potential evidence of a crime); *see also United States v. Harris*, 2016 WL 1441382 at *12 (E.D. Va. 2016) (summarizing cases in which courts have found that cell phones are such "common and integral tools" of the criminal trade that their incriminating nature is immediately apparent and therefore their seizure falls within the plain view exception to the warrant requirement); *United States v. Pugh*, No. CR417-051, 2017 WL 6270151, at *2 & *2 n.2 (S.D. Ga. Oct. 19, 2017), report and recommendation adopted, No. CR417-051, 2017 WL 6210510 (S.D. Ga. Dec. 8, 2017), aff'd, 767 F. App'x 742 (11th Cir. 2019) (finding that the seizure was permissible under both the plain view exception and the exigent circumstances exception).

In sum, whether under the exigent circumstances or plain view exception to the warrant requirement, the seizure of the defendant's cell phone by MPD following the shooting on August

14, 2018, was reasonable.

### B. The search warrant was sufficiently particularized.

It is well settled in the Fourth Circuit and elsewhere that investigators with a warrant can review all of the data on an electronic device to locate the information for which seizure is judicially authorized. Nevertheless, the defendant maintains that the search warrant for the defendant's cell phone was overbroad because it lacked the particularity required by the Fourth Amendment because it allowed the government to review all of the cell phone's data in its efforts to determine the identity of the person who had shot the defendant. This argument has been rejected in courts across the country and should be rejected here too.

Indeed, the Fourth Circuit has expressly held that investigators with a warrant to search electronic devices can review every file on the device to determine whether the file can be seized pursuant to the warrant. It did so most recently in 2020 in *United States v. Cobb*, 970 F.3d 319, 328-29 (4th Cir. 2020), and previously in *United States v. Williams*, 592 F.3d 511, 521-23 (4th Cir. 2010). The defendants in those cases made the same type of arguments that Beardsley advances here.

In *Cobb,* the defendant argued that a warrant to search his computer was invalid because it did not specify the "'types of files sought, the location of the files, the timeframe [and] the relationship between the files and the information' that the police had" about the crime under investigation. *Cobb*, 970 F.3d at 328. Similarly, in *Williams*, the defendant argued that a warrant to search his computers and digital media was invalid because it was not limited to reviewing "only those files in his computer that related to the" specific offenses under investigation. *Williams*, 592 F.3d at 518. Both the *Cobb* and *Williams* courts rejected those arguments with the same reasoning: a validly issued warrant "impliedly authorize[s] officers to open each file on the

computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization—*i.e.*, whether it related to the designated [crimes under investigation]." *Cobb*, 970 F.3d at 329; *Williams,* 592 F.3d at 521-22; *see also, e.g. United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018) ("This warrant *does* permit the police to look at every file on his phone . . . But he is wrong to think that this makes a warrant too general. Criminals don't advertise where they keep evidence."). The warrants in this case do just that; they permit a complete review of the Subject Phones' data to look for information related to the specific crimes under investigation.

Those decisions, like a long line of cases before them, make sense because, ultimately, what the Fourth Amendment requires is reasonableness. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the *place to be searched*, and the persons or *things to be seized*.

U.S. CONST. amend. IV (emphasis added). The Fourth Amendment, of course, protects *places* to be searched, including the home. In that context, the *place* to be searched is the home, and, where papers related to a crime are included in Attachment B as *things to be seized*, officers can enter the home, review papers and seize those related to the crime. That process necessarily involves looking at papers and information that are unrelated to the crime and even allows searches of all rooms, footlockers, file cabinets, dressers, desks, or other places within the home where the relevant papers might be found. And, when looking through the papers in a home, investigators may encounter irrelevant health records, private communications with loved ones, financial information, calendar entries, photographs, travel itineraries, among a long list of other

documents that people keep in their homes. The Supreme Court has explained that such searches are reasonable under the Fourth Amendment.

In *Andresen v. Maryland*, the Supreme Court reasoned that when searching a large collection of items, such as papers, "it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." 427 U.S. 463, 482 n. 11 (1976); *see also United States v. Crouch*, 648 F.2d 932, 933-34 (4th Cir. 1981) ("some cursory reading" of documents during a search is acceptable to determine relevance). The Fourth Circuit and numerous other courts have applied that same reasoning to explain that if investigators obtain a warrant to search an electronic device, then they can review all the data on that device to determine whether the warrant authorizes a certain file's seizure. *See, e.g., Williams*, 592 F.3d at 519-20 (Fourth Circuit, citing *Andresen* in electronic-devices case); *Bishop*, 910 F.3d at 336 (Seventh Circuit, citing *Andresen* in cellular telephone case); *United States v. Smith*, Case No. 19-324 (BAH), 2021 WL 2982144, at *8-9 (D.D.C. July 15, 2021) (District of D.C., citing *Andresen* in cellular telephone case).

Consistent with the Fourth Amendment and the law of this Circuit, the warrant in this case does specify, with particularity, the "*places* to be searched" by a description of the cell phone and a unique MPD evidence barcode number of 108355374 belonging to Sang Huynh. And, as required by the Fourth Amendment, the warrant does specify, with particularity, the "things to be seized" as "any and all electronically stored contents including . . . [description of the type of data to be seized] related to Sang Huynh being the victim of an August 2018 Assault with a Dangerous Weapon (Gun) or linking Mr. Huynh or any associate to activity in violation of District of Columbia law, WHICH is evidence relative to an Assault with a Dangerous Weapon (Gun) and other offenses outlined in DC Code. . . . "

11

There is simply no requirement for search warrants of cell phones to limit the things to be seized to certain categories of information such as photographs or text messages. In fact, the Fourth Circuit has explained that "[a] warrant need not—and in most cases, cannot— scrupulously list and delineate each and every item to be seized. Frequently it is simply impossible for law enforcement officers to know in advance exactly why type of . . . records the defendant maintains or how the case against him will unfold." *Cobb*, 970 F.3d at 327-28 (citation and quotation marks omitted). Instead, it is enough for a warrant simply to "specif[y] the relevant offense" under investigation, even if that means merely authorizing the seizure of, for example, "items . . . relating to" a drug-distribution crime. *Id.* (citing Fourth Circuit cases). Indeed, in *Cobb*, the Fourth Circuit upheld a search conducted pursuant to a computer warrant that authorized the seizure of "[a]ny material associated with the homicide of [victim]." *Id.*; *see also Bishop*, 910 F.3d 335, 337 (7th Cir. 2018) (in a case involving electronic devices, "it is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation"); *United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011) (upholding a computer search warrant that listed the crimes under investigation and enabled investigators to seize "contraband, evidence, fruits, or instrumentalities of said crime(s)").

In sum, a warrant for a cell phone (the "place") allows investigators to search all of the data on the phone in order to locate the relevant information (the "things to be seized") without first guessing where information might be found, just like a warrant for a house (the "place") allows law enforcement to search an entire house and even "innocuous" documents in order to locate the relevant information (the "things to be seized") without first guessing which room, file cabinet, drawer, correspondence box, or other place where the information might be found. Here, the warrant issued by the District of Columbia Superior Court specifically identifies the

subject phone to be searched and particularly described the types of electronically stored data that investigators can seize.

Moreover, even if the warrant in this case did not permit a search for evidence linking Sang Huynh to other criminal activity, the evidence the defendant seeks to suppress would still be admissible under the "plain view" exception, as it was in *Williams*. In the course of MPD's review of Defendant's phone, they were required to conduct "at least a cursory review" of all the phone's data. *See id*. at 522. That review revealed material that is "immediately apparent" to law enforcement of other crimes (drug trafficking and gang activity). As such, the admission of that evidence is permissible under the "plain view" exception to the warrant requirement.

    **C.**    **The good faith exception to the exclusionary rule applies.**

The Supreme Court created a "good faith" exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). Evidence obtained pursuant to a seemingly valid search warrant that was later found to be defective for lack of probable cause was admissible because the officers had reasonably relied on the magistrate's determination that the warrant was supported by probable cause. *See United States v. McKenzie-Gude,* 671 F.3d 452, 459-61 (4th Cir. 2011); *United States v. Dickerson*, 166 F.3d 667, 694-95 (4th Cir. 1999) (holding that the good faith exception may apply even where a warrant is facially deficient); *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015).

The *Leon* Court stated that the good faith exception will not apply in limited circumstances: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)"; (3) where

13

the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923; *United States v. Wellman*, 663 F.3d 224, 228-29 (4th Cir. 2011).

None of the four exceptions apply here. Thus, even if this Court were to determine that the cell phone at issue was searched unlawfully, the FBI in this case acted in reliance on a valid warrant, and the exclusion of the evidence obtained pursuant to that warrant is not an appropriate remedy.

For the foregoing reasons, the motion to suppress should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
James L. Trump
Carina Cuellar
Ryan Bredemeier
Jordan Harvey
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3726
Email: jim.trump@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I caused the foregoing pleading to be sent to counsel of record through the Court's ECF system.

/s/
James L. Trump
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3726
jim.trump@usdoj.gov